Stephen R. SMITH, Jr., Plaintiff
and Appellant,

v.

Dorothy K. BATCHELOR, Larry Peter-
man, and Janae Kingston, dba Movie
Buffs, Defendants and Appellees.

Stephen R. SMITH, Jr., Plaintiff
and Appellee,

v.

Dorothy K. BATCHELOR, Larry Peter-
man, and Janae Kingston, dba Movie
Buffs, Defendants and Appellants.

Nos. 900153, 900157.

Supreme Court of Utah.

April 28, 1992.

Stephen R. Smith, pro se.

John T. Caine, Salt Lake City, for defendants and appellees.

ZIMMERMAN, Justice:

This case is before us on appeal from the Second District Court in Davis County. Stephen R. Smith, Jr., sued his former employers, Dorothy K. Batchelor, Larry Peterman, and Janae Kingston, doing business as Movie Buffs (collectively "Movie Buffs"), charging that Movie Buffs violated both the federal Fair Labor Standards Act ("FLSA") and the Utah Payment of Wages Act ("UPWA") in refusing to pay him the back wages and overtime he had accrued before he left the company.[1] *See* Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–19 (1988 & Supp.I 1989); Utah Payment of Wages Act, Utah Code Ann. §§ 34–27–1, 34–28–1 to –13 (1988) (amended 1991). The district judge granted Smith's motion for summary judgment on his UPWA claim but denied his FLSA claim. Although Smith succeeded on his UPWA claim, the judge refused to grant him attorney fees under the UPWA, in part because Smith, an attorney whom Movie Buffs had employed for computer work, had represented himself throughout the litigation. Smith appeals both the trial court's denial of his motion for summary judgment on the FLSA claim and its refusal to award him attorney fees for his successful UPWA claim. He argues that the trial judge improperly formulated an equitable remedy that contravened the express requirements of the state and federal statutes. We agree that the trial court erred in granting summary judgment on Smith's FLSA claim and remand that claim for disposition consistent with this opinion. However, we affirm the trial court's denial of attorney fees.

■ In reviewing a grant of summary judgment, we state the facts in the light most favorable to the nonmoving party. *E.g., Rollins v. Petersen,* 813 P.2d 1156, 1158 (Utah 1991); *Utah State Coalition of Senior Citizens v. Utah Power & Light,* 776 P.2d 632, 634 (Utah 1989). In this case, however, there is no dispute over the facts because Movie Buffs failed to respond in a timely manner to Smith's requests for admissions, thereby admitting the facts as Smith had described them. *See* Utah R.Civ.P. 36(a). We will consider admissions as undisputed fact even when they apparently contradict other evidence in the record. *See Mud Control Labs. v. Covey,* 2 Utah2d 85, 90, 269 P.2d 854, 857–8 (1954). We therefore state the facts as drafted by Smith and admitted by Movie Buffs.

In March of 1989, Larry Peterman hired Smith to perform computer service for Movie Buffs, a video rental company with more than ten employees and stores in Utah and Wyoming. Before joining the company, Smith wrote to Peterman, describing his understanding of the terms of his employment. Although Smith characterizes this letter as an employment agreement, there was no formal written employ-

<hr />

1. Both Smith and Movie Buffs filed notices of appeal, which were docketed separately and eventually consolidated as No. 900153. However, because Movie Buffs confines its brief to arguing that we should affirm the judgment of the trial court, we consider its claims abandoned and concentrate only on Smith's appeal.

ment contract between the parties. In the letter, Smith stated that he was to be a salaried employee paid $2,000 a month. In his requests for admissions, however, he stated that he drew a wage of $11.65 an hour. Despite this discrepancy, because Movie Buffs failed to respond to Smith's requests for admissions, we accept that Movie Buffs paid Smith $11.65 an hour.

The precise nature of the work Smith performed during his tenure with Movie Buffs is far from clear. In addition to his computer work, Smith may have intended to provide Movie Buffs with legal services; however, we are uncertain if and to what degree Movie Buffs expected to enjoy Smith's legal expertise. By default, Movie Buffs admitted the following statements: First, Movie Buffs did not have Smith perform legal services; second, Movie Buffs required Smith to spend more than 50 percent of his time on nonlegal matters; third, Smith spent 90 percent of his time on computer-related work; and fourth, Smith was not hired as an employee-attorney.

Based on the admissions, we accept that Smith did not handle legal work for Movie Buffs during the course of his employment. However, Smith's letter to Larry Peterman contemplates that Smith would perform collection and other legal services for Movie Buffs as an independent contractor. Smith's letter also indicates that as their employment relationship progressed, Movie Buffs would increase Smith's wages and assign him additional duties and staff. Therefore, we cannot conclude that Smith's employment was to be confined to providing computer services, and we note that the agreement seemed to project his eventual ascension to a supervisory role within the company.

After a dispute over vacation pay, Smith left Movie Buffs, having worked a total of 790.2 hours from March 30, 1989, to August 3, 1989. Movie Buffs paid him for only 580 hours, leaving 210.2 hours' pay due. Because 188.15 of those unpaid hours were overtime hours, Smith claims that Movie Buffs owes him $3,544.80 for back wages and time and a half.

Initially, Smith did not ask Movie Buffs for the overtime compensation, making written demands under UPWA only for the $2,657.95 of back wages.[2] When Movie Buffs refused to accede to his demand, Smith sued Peterman, Kingston, and Batchelor for his back wages, overtime compensation, and attorney fees, alleging violations of both the UPWA and the FLSA. We discuss each claim in turn.

First, Smith argued that Movie Buffs' failure to pay his back wages upon his leaving the company violated the UPWA. The UPWA regulates Utah employers' payment of wages to their employees. *See* Utah Code Ann. §§ 34–27–1, 34–28–1 to – 13. When an employer takes an employee off the payroll, the employee's wages become due immediately and must be paid within twenty-four hours. If the employer fails to do so upon the employee's written demand for payment, the employee's wages continue to accrue from the date of written demand until payment is made, but no longer than sixty days. *Id.* § 34–28–5(1). Consequently, under the UPWA, Smith claimed both his back wages, including overtime compensation, and an additional $4,000 for the sixty days during which his wages accrued. Smith also claimed attorney fees under the UPWA's mandatory attorney fee provision, which requires the court to grant a successful plaintiff a reasonable attorney fee if the attorney recovers at least as much as the employee's original demand. *Id.* § 34–27–1.

As a second cause of action, Smith argued that Movie Buffs' refusal to pay him time and a half for his 188.15 overtime hours violated the Fair Labor Standards Act. For all employees not specifically exempted, the FLSA establishes the national minimum wage, sets the work week at a maximum of forty hours, and requires that employees who exceed forty hours of work

---

**2.** Smith does not explain how he reached the $2,657.95 figure. The 210.2 unpaid hours multiplied by Smith's admitted hourly wage of $11.65 results in a figure of $2,448.83. Nonetheless, because Movie Buffs admitted to owing Smith $2,657.95 in back wages, we accept this total as correct.

per week must be paid one and one-half times their regular compensation. 29 U.S.C. §§ 206–207. Employers who refuse to pay time and a half are liable to their employees for their unpaid overtime compensation and "an additional equal amount as liquidated damages," unless the employers believed in good faith that their withholding overtime was consistent with the provisions of the FLSA. 29 U.S.C. §§ 216(b), 260. In his motion for summary judgment, Smith argued that he should recover an additional $3,544.80 as liquidated damages, plus costs and a reasonable attorney fee under the FLSA's mandatory attorney fee provision.[3] *Id.* § 216(b).

Judge Cornaby held that defendants had admitted by default Smith's requests for admissions and granted summary judgment on Smith's UPWA claim. Based on that evidence, he awarded Smith $3,544.80 in back pay, a sum comprised of both overtime and regular compensation, and $4,000 for the sixty days during which his regular wages continued to accrue. *See* Utah Code Ann. § 34–28–5(1). However, Judge Cornaby denied Smith's request for attorney fees under the UPWA, reasoning that, although the statute called for attorney fees, the $4,000 penalty was sufficient, considering "the equities in this case" and the fact that Smith was an attorney, apparently concluding that because Smith had handled the litigation himself, he had not incurred attorney fees. He also denied Smith's

FLSA claim, holding, "The plaintiff cannot recover under both federal and state laws for the same loss."

■ In all, Judge Cornaby ordered Movie Buffs to pay Smith $7,544.80, plus costs. Movie Buffs subsequently moved to set aside the judgment or, alternatively, for permission to withdraw or amend its admissions by default. Judge Cornaby denied both motions.[4]

Before our court, Smith attacks Judge Cornaby's denial of the FLSA claim and refusal to grant attorney fees. He argues that Judge Cornaby improperly crafted an equitable remedy that transgressed the express command of the UPWA and the FLSA. Because the FLSA does not preempt the UPWA, he argues, Movie Buffs violated both a state and a federal law and must bear the consequences of both, including their requirements of attorney fees. We agree that Judge Cornaby should not have dismissed Smith's FLSA claim and remand for disposition of that claim. We affirm both Judge Cornaby's summary judgment for Smith under the UPWA and his refusal to grant attorney fees.

We first note the applicable standard of review. Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Rollins v. Petersen*, 813 P.2d 1156, 1159 (Utah 1991); *Landes v.*

3. Although his motion for summary judgment is ambiguous, Smith apparently demanded his unpaid wages under both the UPWA and the FLSA. In addition to the respective penalties for violation, both statutes provide for recovery of unpaid compensation. The UPWA allows recovery of all unpaid wages, Utah Code Ann. § 34–28–5(1), while the FLSA requires reimbursement of unpaid overtime compensation, 29 U.S.C. § 216(b).

Despite each statute's provision for unpaid wages, we consider Smith's request for back wages only under the UPWA. Once the trial court awarded Smith his back wages, including overtime, under the UPWA, his wages were no longer "unpaid." The UPWA judgment paid the wages, thereby obviating Smith's claim for unpaid wages under the FLSA.

Nevertheless, because the FLSA violation occurred at the time Movie Buffs failed to pay Smith's overtime compensation and was not

remedied entirely by the subsequent judgment, Smith's award of back wages under the UPWA poses no bar to his recovery of *penalties* for violations of both the state and federal statutes.

4. In its notice of appeal and its second amended docketing statement, Movie Buffs also claimed that the trial judge had abused his discretion in refusing to set aside the summary judgment or to allow it to withdraw or amend the admissions. However, Movie Buffs failed to brief this issue before this court. We have long held that where an appellant fails to brief an issue on appeal, the point is waived. *See, e.g., Reid v. Anderson*, 116 Utah 455, 460, 211 P.2d 206, 208 (1949); *McFarlane v. Winters*, 114 Utah 502, 504, 201 P.2d 494, 495 (1949); *see also Pixton v. State Farm Mutual Auto. Ins. Co.*, 809 P.2d 746, 751 (Utah Ct.App.1991). Therefore, we will not review the trial judge's denial of Movie Buffs' motions.

*Capital City Bank,* 795 P.2d 1127, 1129 (Utah 1990); *Utah State Coalition of Senior Citizens v. Utah Power & Light,* 776 P.2d 632, 634 (Utah 1989). Because summary judgment is granted as a matter of law rather than fact, we review the trial court's legal conclusions for correctness. *Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990); *Landes,* 795 P.2d at 1129; *Division of Consumer Protection v. Rio Vista Oil, Ltd.,* 786 P.2d 1343, 1347 (Utah 1990); *Utah State Coalition of Senior Citizens,* 776 P.2d at 634.

This case presents us with two questions of law: First, should the trial court have allowed Smith to recover under both state and federal law? And second, should the trial court have allowed Smith to collect a reasonable attorney fee under either statute? We address each issue in turn.

We first address whether Smith should have recovered under both state and federal law. The trial court found and Movie Buffs now argues that equity prohibits both state and federal recovery for the same violation. This is incorrect. Equity follows the law. It cannot abridge an explicit, statutory requirement. *See Stroud v. Stroud,* 758 P.2d 905, 906 (Utah 1988); *see also Immigration and Naturalization Serv. v. Pangilinan,* 486 U.S. 875, 883, 108 S.Ct. 2210, 2216, 100 L.Ed.2d 882 *reh'g denied,* 487 U.S. 1264, 109 S.Ct. 27, 101 L.Ed.2d 977 (1988); *Alewine v. City Council of Augusta,* 699 F.2d 1060, 1070 (11th Cir.1983), *cert. denied,* 470 U.S. 1027, 105 S.Ct. 1391, 84 L.Ed.2d 781 (1985). Although the trial court did not explicitly hold and Movie Buffs does not now argue that the FLSA preempts the UPWA, an apprehension of preemption may have underlain the trial court's statement that "plaintiff cannot recover under both federal and state laws for the same loss." To dispel this apprehension, we address the preemption argument. If the FLSA does preempt the UPWA, the trial judge erred in allowing recovery for Smith's preempted state cause of action. If, on the other hand, the FLSA does not preempt the UPWA, the trial judge erred in refusing to consider Smith's federal cause of action.

We begin with a survey of the doctrine of preemption. Under the Supremacy Clause, Congress has the power to preempt state law. U.S. Const. art. VI, cl. 2. When interpreting statutes, courts infer Congress' intent to exercise this power in three different circumstances: first, when the statute explicitly states that Congress intends to preempt state law; second, when Congress has legislated so comprehensively that it occupies an entire field of regulation, leaving no room for the states to supplement federal law; and third, when state law conflicts with federal law, either in that it is impossible to comply with both or in that the state law stands as an obstacle to the accomplishment of congressional objectives. *California v. ARC Am. Corp.,* 490 U.S. 93, 100–01, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989); *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.,* 489 U.S. 468, 477, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989); *Northwest Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas,* 489 U.S. 493, 509, 109 S.Ct. 1262, 1273, 103 L.Ed.2d 509 (1989); *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978); *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 633, 93 S.Ct. 1854, 1859, 36 L.Ed.2d 547 (1973). We now examine the FLSA to see whether it falls into any of these three preemption categories.

Initially, we note that the FLSA contains no express federal intent to preempt state law. *See* 29 U.S.C. § 218; *Maccabees Mut. Life Ins. Co. v. Perez–Rosado,* 641 F.2d 45, 46 (1st Cir.1981). It therefore does not fall into the first preemption category.

Second, the FLSA is not so comprehensive that it implies congressional intent to occupy the field of wage payments. Section 218(a) states that the FLSA's minimum wage and overtime requirements do not prevent states from enacting their own statutes that are more protective of employees. 29 U.S.C. § 218(a); *Overnite Transp. Co. v. Tianti,* 926 F.2d 220, 222 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991); *Cosme Nieves v. Deshler,* 786 F.2d 445, 452 n. 20

(1st Cir.), *cert. denied,* 479 U.S. 824, 107 S.Ct. 96, 93 L.Ed.2d 47 (1986); *Doctors Hosp., Inc. v. Silva Recio,* 558 F.2d 619, 622–23 (1st Cir.1977). Since Congress allows state regulation even in areas directly affected by the FLSA, Congress could not have intended federal law to occupy the field of wage regulation that the FLSA does not affect, such as the UPWA's requirement of the prompt payment of wages. The FLSA therefore does not fall into the second category.

Finally, the UPWA does not conflict with the FLSA's provisions or goals. The statutes are directed toward different wrongs and supply different remedies. Whereas the FLSA sets minimum wages and maximum hours and requires that workers receive extra compensation for working overtime, the UPWA ensures that employers promptly pay their employees' wages. *See* 29 U.S.C. §§ 206, 207; Utah Code Ann. § 34–28–5.

We recognize that in some cases, as here, FLSA remedies will appear similar to those provided by the UPWA.[5] However, this coincidental similarity of remedies does not indicate a similarity of rights. The statutes are aimed toward different but harmonious ends. It is possible for an employer to comply with both laws simply by compensating for or curtailing hours worked in excess of forty per week and by promptly paying wages to its employees. Prompt payment of wages in no way frustrates the federal goal of maintaining "the minimum standard of living necessary for the health, efficiency, and general well-being of work-

ers." 29 U.S.C. § 202(a). Consequently, the FLSA does not fall into the third preemption category.

Because none of the three circumstances in which courts infer preemption are present in this case, we hold that the FLSA does not preempt the UPWA. In withholding Smith's back wages and failing to pay him time and a half for overtime, Movie Buffs violated two separate laws: one state and one federal. It therefore must bear the consequences of each.

■ Having determined that the federal statute is applicable to this case, we next examine whether, given the admitted facts, Smith should recover under the Fair Labor Standards Act. As a threshold matter, we note that after examining Smith's requests for admissions, we cannot say with any certainty that Movie Buffs admitted its liability under the FLSA by admitting that it owed Smith overtime compensation. Although several of the admissions touch on the subject of overtime, none establishes that Smith enjoyed FLSA protections.[6] Because the admissions are not dispositive on this issue, we turn to other evidence in the record to determine whether Smith should recover under the FLSA. This inquiry requires an understanding of the parameters of the FLSA, which we sketch below.

Unless specifically exempted by the statute, every employee is protected by FLSA wage, hour, and overtime restrictions. Professionals, administrators, and executives are exempt from FLSA protections. 29 U.S.C. § 213(a)(1). The question of whether an employee serves as a profes-

---

**5.** As Smith presented them, the liquidated damages of both statutes bore a coincidental similarity. While Smith claimed $4,000 for two months' pay under UPWA, he claimed $3,544.80 for the FLSA penalty equal to his unpaid overtime compensation. Such rough similarity may explain why the trial judge confused the congruence of the statutes' remedies with the congruence of the rights they confer.

In actuality, however, this similarity was not only confusing, it was wrong. Although, as discussed below, we remand the FLSA claim to the trial court and therefore make no factual determinations, we note that on the record before us, Smith's computation of his FLSA penalty is incorrect. An amount equal to Smith's unpaid overtime compensation is $3,287.92,

which is the wages due for his 188.15 overtime hours. He should not receive overtime compensation for his 22.05 regular hours.

**6.** In particular, Movie Buffs admitted to two requests regarding Smith's unpaid salary. One stated that Movie Buffs owed Smith $2,657.95 in back wages; the other stated that Movie Buffs owed him $3,544.80 in back wages. In his motion for summary judgment, Smith characterized the $3,544.80 total as the sum of his regular wages plus his overtime compensation. However, nothing in the admissions themselves linked the $3,544.80 figure to overtime compensation. Because Movie Buffs did not admit to owing Smith overtime, it could not have admitted liability under the FLSA.

sional, an administrator, or an executive depends on the details of the employment arrangement, particularly the salary and responsibilities of the position and the education and training required for the job. *See* 29 C.F.R. § 541.1–541.602 (1991).

In this case, Smith joined Movie Buffs under the agreement that he would provide computer service and collection and other legal services and that Movie Buffs would assign him "additional duties and staff" as his performance warranted. On these facts, we are unsure whether Smith is a professional, an administrative, or an executive employee exempt from the FLSA. Computer workers are considered professionals exempt from the FLSA only if they command a salary higher than six and one-half times the minimum wage, a sum that exceeds Smith's $11.65 per hour. *See* 29 C.F.R. § 541.5c(a); 29 U.S.C. § 206(a). Thus, Smith's exempt status depends on two issues: first, whether his legal training infected his employment and made him a professional, and second, whether the parties envisioned Smith's serving Movie Buffs in an executive or administrative capacity as supervisor of a staff of computer workers.

Although we accept as admitted that Smith did not perform legal services during his four months at Movie Buffs, his employment agreement contemplates Smith's provision of collection and other legal services and his supervision of a future staff. Deciding whether this expectation of exercising supervisory power and providing legal services made Smith an exempt employee will require a detailed inquiry into the facts of Smith's employment arrangement. *See* 29 C.F.R. § 541.1–541.602; *see also Walling v. General Indus. Co.*, 330 U.S. 545, 547–50, 67 S.Ct. 883, 884–85, 91 L.Ed. 1088 (1947); *Prakash v. American Univ.*, 727 F.2d 1174, 1176–77 (D.C.Cir.1984); *Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir.1983), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); *Dalheim v. KDFM–TV*, 706 F.Supp. 493, 495 (N.D.Tex.1988); *Sherwood v. The Washington Post*, 677 F.Supp. 9, 14 (D.D.C.1988), *rev'd on other grounds*, 872 F.2d 1144 (D.C.Cir.1989) (per curiam). This is an issue to be determined upon remand because it requires facts beyond those before us now. Therefore, we remand Smith's FLSA claim for disposition by the trial court.

■ We now turn to the final issue presented by this case: Should Smith's recovery under the UPWA include attorney fees and should Smith recover attorney fees under the FLSA if on remand he succeeds on his federal claim? The trial judge denied attorney fees, saying that recovery was barred because of "the equities in this case" and because Smith was an attorney and had represented himself throughout the litigation.

■ Although we find the trial judge's reliance on equity misplaced, *see Stroud v. Stroud*, 758 P.2d 905, 906 (Utah 1988), we agree that Smith's pro se litigation should not secure him attorney fees. It is the general rule that pro se litigants should not recover attorney fees for successful litigation. *See, e.g., Bone v. Hibernia Bank*, 354 F.Supp. 310, 311 (N.D.Cal.1973); *O'Neil v. Schuckardt*, 112 Idaho 472, 480, 733 P.2d 693, 706 (1986). *Cf. Alaska Fed. Sav. & Loan Ass'n of Juneau v. Bernhardt*, 794 P.2d 579, 581–82 (Alaska 1990); *O'Neil v. Lumber Co. v. Nickelodeon Cos.*, 190 Mont. 25, 28, 617 P.2d 1291, 1293 (1980). We recognize that some courts depart from this general proscription when the pro se litigant is an attorney. *See, e.g., Ellis v. Cassidy*, 625 F.2d 227, 230–31 (9th Cir.1980); *Burrell v. Hanger*, 650 P.2d 386, 387 (Alaska 1982) (per curiam); *Renfrew v. Loysen*, 175 Cal.App.3d 1105, 1109–10, 222 Cal.Rptr. 413, 415 (1985); *Friedman v. Backman*, 453 So.2d 938, 938 (Fla.Ct.App. 1984); *Wells v. Whinery*, 34 Mich.App. 626, 630, 192 N.W.2d 81, 83 (1971) (per curiam); *Winer v. Jonal Corp.*, 169 Mont. 247, 251, 545 P.2d 1094, 1096–97 (1976); *McMahon v. Schwartz*, 109 Misc.2d 80, 86–88, 438 N.Y.S.2d 215, 219 (1981); *Hamilton v. Telex Corp.*, 625 P.2d 106, 108 (Okla.1981).

We decline to join these courts in allowing pro se attorneys to recover fees while lay pro se litigants go uncompensated. In

our view, such a result discriminates between lay and attorney litigants. It is a sufficient advantage to a lawyer-litigant that he or she is capable of competently presenting his or her claim without the need of retained counsel. Because we are loath to enhance that advantage by giving the lawyer-litigant recovery not only as a successful party, but also as that party's attorney, we hold that pro se litigants should not recover attorney fees, regardless of their professional status. *See Connor v. Cal–Az Properties, Inc.,* 137 Ariz. 53, 55–56, 668 P.2d 896, 898–99 (1983); *Swanson & Setzke, Chtd. v. Henning,* 116 Idaho 199, 202, 774 P.2d 909, 911–13 (Idaho Ct.App.1989); *Golden Riverside Apartments, Inc.,* 488 So.2d 478, 480 (La.Ct.App. 1986); *cf. White v. Arlen Realty & Dev. Corp.,* 614 F.2d 387, 388 (4th Cir.), *cert. denied,* 447 U.S. 923, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980); *Falcone v. Internal Rev. Serv.,* 714 F.2d 646, 647 (6th Cir.1983), *cert. denied,* 466 U.S. 908, 104 S.Ct. 1689, 80 L.Ed.2d 162 (1984). We therefore affirm the trial court's disposition of this issue.

In summary, we affirm the trial judge's denial of attorney fees and his summary judgment for Smith on the UPWA claim, reverse the summary judgment against Smith on the FLSA claim, and remand for disposition of the FLSA claim consistent with this opinion.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, Justice: (Concurring and Dissenting).

I concur with the majority opinion except for that portion dealing with a pro se litigant's entitlement to attorney fees under the Fair Labor Standards Act ("FLSA") and the Utah Payment of Wages Act ("UPWA"). The majority holds that Smith, as a pro se attorney, cannot recover attorney fees because a lay pro se litigant would not be entitled to recover fees in a similar action. The majority reasons that "grant-

ing fees to pro se lawyers discriminates between lay and attorney litigants." I believe that the policy underlying the allowance of attorney fees for successful litigants under the FLSA and UPWA requires a different result on this issue.

As a general rule, the amounts recoverable under the FLSA and the UPWA are so small that attorney fees will exceed any potential recovery. Hence, unless an award of attorney fees is available, workers would be unable to enforce their rights under these statutes. To further the policy of the statutes, a pro se attorney litigant should be compensated for economic loss resulting from pursuit of his or her rights under these acts. Otherwise, the time and trouble involved in pursuing such a case would far outweigh the ultimate benefit and thus discourage enforcement of the FLSA and UPWA.

I submit that this policy is equally applicable to non-attorney litigants. I agree with the majority that allowing a pro se attorney litigant to recover while denying that same right to other pro se litigants would unfairly discriminate between lay and attorney pro se litigants. However, rather than deny the right to recover attorney fees to all pro se litigants, I would allow all pro se litigants to recover fees where they can show an economic loss resulting from diversion of time from income-producing activities to the litigation of their claims. In my view, that position better promotes the policy underlying the statutory grant of attorney fees.[1]

Although not widely accepted, some courts have recognized the position I would adopt by acknowledging that non-attorney pro se litigants may be entitled to an award of attorney fees in appropriate circumstances. *See, e.g., Crooker v. U.S. Dep't of the Treasury,* 634 F.2d 48, 49 (2d Cir.1980) (implicitly holding that a pro se litigant who shows that prosecution of lawsuit under Freedom of Information Act caused diversion of time from income-producing activity may be entitled to attorney fees);

---

1. This position is also more consistent with our constitutional provision which gives a litigant the right to act pro se in any civil action in which he or she is a party. Utah Const. art. I, § 11.

*Cox v. U.S. Dep't of Justice*, 601 F.2d 1 (D.C.Cir.1979) (court may award attorney fees to non-attorney pro se litigant in Freedom of Information Act lawsuit).

In sum, given the policy for awarding attorney fees to a prevailing litigant in an FLSA and UPWA case, I see no reason why both pro se attorney and lay litigants should not be compensated for economic loss sustained from the diversion of time from income-producing activities.